This next case is the Estate of Legate, and for the appellant, Ms. Bain, and for the appellee, Mr. Wilder, you may proceed. Good morning. May it please the Court, again, my name is Colleen Bain, and I'm here on behalf of Defendant Appellant Honeywell International, Inc. Honeywell is here this morning on an issue presented in the underlying case. Actually, Legate, as I understood, is consolidated with Hoogerwerf for purposes of this argument on the Court's motion, and the issues presented in those cases are identical. With time allotted, I'd like to focus on the central issue on appeal in those cases, which is the scope and reach of Illinois Supreme Court Rule 237B. I'm, of course, ready to answer any questions and invite questions from the panel, but again, in the absence of questions, I'll focus my comments on the primary issue presented in the appeals. And that issue is this. Does Supreme Court Rule 237B, dealing with persons whom a party may be required to produce at trial, include not only persons who are officers, directors, or employees at the time of trial, but also those persons with whom a party has a relationship, or those persons who are under the control of a party, or those persons over whom a party may exercise some sort of leverage. As this Court held in its February 2000 decision of White v. Garlock Sealing Technologies at 398 Bill App 610, the answer is no, it does not. In the cases below, however, the trial courts defaulted Honeywell on both liability and damages for not producing at trial an individual by the name of Joel Charm. It is undisputed at the time of trial that Mr. Charm was not an officer, director, or employee of Honeywell. And I think it's instructive to consider the terms that both the plaintiffs and the trial courts below used when discussing Mr. Charm. Never did they refer to Mr. Charm as an employee. It's undisputed again that he was not a director or an officer, and it's undisputed that he was not an employee. In Legate, the plaintiff referred to Charm's relationship with Honeywell. The plaintiff referred to Charm's continuing to provide services. His past employment with Honeywell. His situation with Honeywell. His role as a 206 representative for Honeywell. In their brief, they refer to the arrangement between Charm and Honeywell. They refer to Charm's work for Honeywell, and they refer to his depth of involvement with Honeywell. Nowhere, however, in the record or in the briefs before you is there any simple statement that says Rule 237B applies here because Mr. Charm is an employee of a party. Despite the clear and unambiguous language of 237B, which again employs very limited and specific terms, terms that this court held in White v. Garlock are legal terms of art. Officer, director, or employee. Despite that clear language, despite the controlling authority of White v. Garlock, Honeywell was defaulted for its failure to produce Mr. Charm. And therefore, Honeywell's position is very simple. And it is the position articulated by this court not only in White v. Garlock, but also in such decisions as Johnson v. Owens Corning, Kearney v. Breakgate, and also Adcock v. Breakgate. And that position is this. The rule is the rule. And if the rule is clear and unambiguous, it has to be applied, construed, applied, and enforced as written. What if there was evidence that Honeywell sat down with this person and said, we need to figure out a way that you won't testify? We need to figure out a way to get around Rule 237. The answer to that, Your Honor, is again, 237B applies to an officer, director, or employee of a party at the time of trial. It's a limited rule. It's limited in terms of officer, director, and employee. And it's limited in terms of when a person fits those specific roles. And that's at the time of trial. So your argument is the law is the law, even if it doesn't make any sense? The law is written by the Illinois Supreme Court. Rule 237B is clear and unambiguous. And although there is no evidence on this record that that occurred in this case, Honeywell's position would be that yes, if regardless of the background, the motive, the strategy, if at the time of trial an individual is not an officer, director, or employee, he is not subject. In fact, in the trial courts below, the trial courts instructed Honeywell, you don't want to bring him, fire him. And so absolutely, if he's not an employee at the time of trial, he cannot be called. And in this case, on this record, Mr. Charm was operating as an agent for the company. He was not an employee. He was an employee at one time? He was an employee in 1997, up through 1997. He retired from a Honeywell predecessor called Allied Signal in 1997. And thereafter, he did form his own company called Charm HS&E International. He has performed consulting services for Honeywell since 1997, but he has not been an employee since 1997. And plaintiff's briefs acknowledge the fact that this quote-unquote arrangement with Honeywell has been in place for some time. Of course, you've produced him as a witness, though, since 1997. We have produced him as a witness. We have produced him as a 206 deponent. He does verify discovery under 213, both of which, if you look again at the rules, allow for somebody other than an employee, officer, director to perform those functions, whether it's an agent, managing agent, other person. Did you produce him in the past in compliance with Rule 237B? He has been called under Rule 237B, and he has been produced voluntarily in response to a request by Honeywell that he testify. In the past, that is correct. We have produced him in response because at that time, Mr. Charm, still operating under what was called a consultant's agreement, still operating in his role as a consultant that has been established and followed since 1997, when Honeywell would inquire of Mr. Charm, will you please come to, as part of your services, will you come and testify in response to this notice? The answer has historically been yes. As the record in this case makes clear, Mr. Charm in 2011, early 2011, indicated to Honeywell he was no longer willing to perform certain services. Part of that included travel, not just travel to Illinois, but travel anywhere outside of the New Jersey, New York metro area. And so there was no longer the ability of Honeywell to say, will you come, or there was the ability to ask them to come, and the record is clear that Honeywell did that in response to the court's orders denying our motion to quash. And his response was, no, I will not come. In the past, he has said yes. But in the past, there's never been an argument, and again, Honeywell hasn't presented that argument, that he wasn't subject to 237B. The argument here is, he has consistently, since his retirement from Honeywell, under the clear language of the rules, and certainly under the transition agreement that was in place in 2011 at the time of these trials, not subject to 237, because he was not an officer, director, or employee of the company at the time. Is there another way for the plaintiff to get in the evidence from Charm's testimony from prior trials? Absolutely, Your Honor. Mr. Charm, it's evident in the record, has testified over 20 times in different trials on basically identical allegations involving an asbestos conspiracy. There are over 45 separate days of trial testimony from which a plaintiff could pull the transcript and the testimony that they wanted. And of course, the avenue is open to plaintiffs, as it is as to any individual who's not subject to 237B, which is, first of all, to ask somebody if they're willing to come and testify, and if they're not, to use the penal power of the court in which the person is subject to the power of the court to get an evidence deposition. Neither of those options were pursued by the plaintiff in these cases. Could the plaintiffs use the testimony from prior cases? The plaintiff could use the testimony from prior cases, and indeed, it is standard practice that we have used, and we designate prior deposition or prior trial evidence deposition or trial transcript when a witness is unavailable. Certainly, a witness not being subject to the personal jurisdiction of the trial court, somebody that's not subject to 237B, is an unavailable witness, and a motion is made to rely on prior deposition or trial designations. The transcript is designated, and it is read into the record. If the concern is the lack of a live witness, again, there is the availability of pursuing a videotaped evidence deposition that then can be played live, quote, unquote, live, excuse me, to the jury. Don't you have some way that you could object to testimony from prior cases coming in? Absolutely, a party can object, but the standard practice has been, and the practice is, if a witness is not available and the court has reviewed the transcript, there might be objections on a question-by-question basis, or there might be objections as to portions. The party can cross-designate testimony. So there is a procedure in place to allow that to happen when a witness is unavailable for live testimony. And again, a witness who's not subject to the personal jurisdiction of the court, but who has prior trial testimony, is somebody that we could go through that procedural process to designate prior testimony. It has been done in the past. The record and the briefs indicate that Mr. Koss, an individual that was also a former employee of Honeywell, likewise retired from Honeywell and then did provide some consulting services. Mr. Koss has fully retired from the company and from providing any consulting services, and on at least one occasion, his testimony from a prior trial was designated, counter-designated, objections were heard, and his testimony was read to the jury in at least one case subsequent to his decision to no longer provide services to Honeywell. I think it's probably clear, but I would like to just note, for your honors, that on the issue of the proper construction of Supreme Court Rule 237B, the review is de novo. And under a de novo review, this court must ascertain and give effect to the intent of the Supreme Court in promulgating the rule. And the most reliable indicator of the Supreme Court's intent is the specific language of the rule. And again, White v. Garlock holds that the specific language of the rule in 237B is limited, is narrow, is clear and unambiguous. They are legal terms of art. Officer, director, employee. Was that determined here as to what term was? I'm sorry, your honor? Did the trial court determine in this case what term was or was not? The trial court in both cases below, in both Legate and Hoogerwerth, never made a finding or said Charm is an employee. Again, just as plaintiff referred to a relationship or continuing to provide services, the trial court in Legate referred to the arrangement between Honeywell and Mr. Charm. Over and over, his reference when considering both Honeywell's motion to quash the 237B as to Mr. Charm and the motion for reconsideration on that ruling as well as then Plaintiff's motion for sanctions, he referred consistently to the arrangement. He referred to the role that Charm has assumed. He referred to the fact that Honeywell was Charm's quote, unquote, primary principal. He acknowledged that since 1997, Mr. Charm has worked. And the evidence in the record is that he has worked for other clients. He has worked for other chemical companies. He has worked for the EPA since his retirement in 1997. And he has also worked for a group of plaintiff minors in some litigation. The trial court below referred to the relationship. He also referred to the impact on the ability of a party to present its case. And again, just as in White v. Garlock, how substantial a relationship is or whether or not somebody can exert some control over a non-employee, in White v. Garlock, this court holds those are immaterial. Honeywell's position would be that the impact of a person's testimony, the significance or lack thereof of that testimony, is simply immaterial to a consideration under 237B. He's either an employee, officer, director at the time of trial, or he is not. And again, the Supreme Court, in writing rules, uses terms specifically. In 237B, it's officer, director, employee. In 206, you can bring a corporate representative who is a managing agent or, quote, unquote, other persons in addition to directors. In 213, in the verification of discovery, you can have an officer verify discovery or you can have an agent verify discovery. The terms agent, managing agent, other persons doesn't appear in 237B. And I would submit that the same goes to if you wanted the consideration to be, well, is this witness important to one party's case, or if he was at ever a time employed, the court could have included that language. It says at the time of trial. It doesn't say at the time of the incident or if there was ever a time when a person was an employee. It doesn't say even after receipt or upon receipt of a 206 notice. White v. Garlock was not a unanimous decision. I'm sorry? White v. Garlock was not a unanimous decision. That is correct. There was a special concurrence in White v. Garlock by Justice Appleton. The special concurrence was very brief, and it pointed out Justice Appleton's concern that in some instances, perhaps the broad statement of the court could be, I don't think this term was used, but perhaps abused under the court's interpretation of the rule. And he gives an example, Justice Appleton, of somebody officially being employed by Corporation A, but really being employed by Corporation B. And absolutely, Justice Cook, you're correct, that the issue of Justice Appleton's special concurrence was certainly addressed by the trial courts below. The final point in Justice Appleton's special concurrence is there was no evidence in the record that the contract was, in fact, entered into for reasons to evade 237B. In this case, we do, in fact, have a contract between Honeywell and Mr. Charm. It was entered into in March of 2011. We know from the record he's had a consulting arrangement and an agreement in place since 1997 that allows him to act as an agent for the company. And by plaintiff's own admission in the briefs, those arrangements have been in place for some time. And there is no evidence in this record that Honeywell chose or Honeywell entered into an arrangement with Mr. Charm specifically to evade the rule 237B. Again, since 1997, he has not been an employee. He's been an independent contractor, an agent of the company. And so revising that agreement in March 2011 at the behest of Mr. Charm did not change anything regarding his status with the company other than limiting the services that he performed as an agent. And there is an affidavit in the record in both LeGate and Hoogerwerth from Mr. Charm indicating that he went to Honeywell. He said he needed to cut back on his services. He had personal obligations that he wanted to meet. And one of the things he was no longer willing to do as an agent for the company operating under a consultant's agreement was to travel. And again, that travel limitation was not specific to Illinois. It was anywhere in the country. So I do acknowledge the special concurrence by Justice Appleton in the White v. Garlick decision. I do not believe that it's a situation that is applicable here where there is evidence of a contract in record and there's no evidence that that contract either changed his status some way from an employee to a non-employee, even if that was an issue, or was entered into specifically to evade the requirements of 237B. It was at the behest of Mr. Charm. The two other issues raised go to the sanction that was imposed and the due process violations that Honeywell argues occurred upon sanction and the default. Barring any questions from the panel, Honeywell will rest on its briefing with regard to those two issues. But again, I circle back to the very simple premise of this appeal, which is the rules mean what the rules say. They have to be applied as written, and the rule here is officer, director, and employee. Parties in litigation in the state of Illinois are allowed and should feel comfortable relying on a clear application of those rules, particularly when the rule is clear and unambiguous and when there's controlling authority from the appellate court that that is in fact the case and that the rule is specific and limited, involving and applying specific legal terms of art, that of employee, officer, or director, and Mr. Charm simply was not within that specific role at the time of the trials below. Absent any further questions, I thank you for your time this morning. Thank you. Mr. Wilder? Good morning. Jim Wilder for the Legate and Hoogerwerth families. I'm asking you to affirm your judgments, and if there are any questions, I'd be happy to start with those. Well, let me ask this question. How old a fellow is Mr. Charm? I mean, I think you know him certainly better than any of us do. Graduated University of Michigan, I believe, in 64, 65. So I would say he's about 64, 65 now. I know he's under 70. First question, I didn't get that one. He got his master's in 67, so back two years. 65, he was born somewhere in the 40s, about 43 or so. Could be 67 or so. But his health is not an issue or his age. And it was not an issue at the trial level. The affidavit was filed saying he wanted to cut back, that he wanted to spend more time with his grandkids. But that was really never pushed. And, in fact, Honeywell can say what he wants about me, but I don't believe this record would reflect that I've ever failed to deal with Mr. Charm's health concerns because he's had some over the years. And, in fact, there was even some concern that did not impact these decisions, but I guess to back up a little bit, the way it has worked in Bloomington is three cases are set for trial on a given trial calendar. And there were three cases set for trial on the April trial calendar from Judge Lawrence. The first was Hoogerwerth, the second was Burtis, and there was a third case. And we filed a motion to compel. As soon as we heard Honeywell saying that they weren't, as soon as they sent a letter saying they weren't going to produce Charm anymore, then we said, well, we need to compel a Rule 206 deposition of somebody else. And what's left out of the Honeywell briefs is both of these judges tried to work, and I suggested that if they needed time to find somebody else, we could continue the trial for a period of time. John Hoogerwerth's dead. It wasn't an exigent case where he had, you know, living veins and pelioma. Judge Lawrence gave and allowed the motion to compel and requested, you know, they find somebody else. And their answer was that days or weeks, none of that really mattered. They didn't have an alternative to Mr. Charm that they could find. And so after the Hoogerwerth default was entered, in the second case that had been up in April, the Burtis case, and this is in the Legate briefing, the Burtis case, we moved to compel there saying, find us somebody other than Mr. Charm, since you're saying you're not going to produce him, somebody other than Mr. Charm who is knowledgeable about the corporation. And they were given 45 days in that case to come up with an alternative. Now, on the same track, Judge Drzeski had the June calendar with the Legate case, and we found a motion to compel in Legate once we knew it was the number one, saying give us somebody besides Mr. Charm who will be subject to 237 and can answer under oath in front of the jury about some of the positions the company takes. That motion was allowed, and it was timed, it was a short time frame, but the timing isn't borrowed by anyone at this time, so it would track the Burtis date of disclosure, which was late May, the week before the June trial calendar. And the designation, which came a couple days late, but I'm not arguing about that, was that the alternative was Joel Charm, who they were designating as their room 206 opponent in the Legate case, and for that matter in the Burtis case, that they were going to produce him, although they were still taking a position they didn't have to produce him at a trial. The effect of the rules, there's a language of the rules, and I suggest there also be given practical effect. Does Joel Charm get a W-2 from Honeywell? Not to my knowledge, and I think that's been true for years, and it was true during the years when they called him as a witness themselves, which they did in the first case we had. It was true when he sat as a corporate representative throughout trial, which he's done on more than one occasion, sat with counsel and went back at night and assisted them and helped direct counsel for his prior testimony. It was true when he answered. Well, if you're an employee in this situation and you get tired of doing all this, why can't you just say to hell with it, I quit? You could, and in fact, if that's what he had done, then I think that's what costed it, apparently, the year before. They had two corporate representatives, Justice Goode, Coss and Charm. They both retired in November of 1997 and became independent contractors, and they're the only people that ever got designated by the company to speak on behalf of the company, to sign discovery and to appear in Rule 206 steps. Coss quit completely, and so Coss was out of the litigation. That was in the spring of 2010. That's referenced in the Legate Briefs. Charm, we got this affidavit after he appeared in February, a case we had. We then got the letter and a new consulting agreement, an affidavit, March 16th, and the next day I said, well, give me the alternative. He could quit entirely, but as Judge Lawrence asked of Honeywell's counsel at the trial level, when you entered into this arrangement saying you're going to continue to use him, he just isn't going to travel more than 100 miles from his home in New Jersey, you were aware that he's been subject to Rule 237 in this jurisdiction, both before White 2 and relying on Justice Appleton's concurrence after White 2. You were aware of that, right, Mr. Zimmerman? Yeah, we know, but we still want to take advantage of that. So the answer would be not to enter into this limited contract where Charm and Honeywell in effect determine the scope of Rule 237. If we follow the majority in White v. Garlock, we need to overturn the trial court's decision? If you determine that it's just black and white, it's somebody, a W-2 employee, if so, they're subject or officer or director, or if they're a W-2 employee, they're subject, if they're a W-2 employee, not a W-2 employee, they're not subject, then you would probably have to overturn the trial court's ruling on Rule 237 that he had to be produced because he's not a W-2 employee. Do you concede he's not an officer, director, or employee? Not a W-2 employee. Again, I think there can be an employment relationship based on, as said in the special concurrence, based on the practical application of Rule 237, what somebody does for a company, what their relationship is, what their income is, what their conduct is for the company. The trial court did not find that he was an employee, did it? Or not an employee? They never said that, either one of them. They relied heavily on Justice Appleton's concurrence, and they also relied on the earlier decisions, including Johnson and Kearney, that you wrote, or for that matter, Adcock, that Justice Connick wrote, that I believe you run the panel on that one also. But they never said, I find he's an employee. They said, I find he's subject to Rule 237, given the relationship that exists between Honeywell and Charm, and given it wasn't an old relationship. He had been tendered as a Rule 206 deponent January 28, 2011, before the February trial. And after that deposition, he'd been given 10,000 more new documents that were first produced in February of 2011, given them not by me, but by Honeywell, to become familiar with them. I guess to follow up completely on your question, Justice Cook, yes, somebody could say, I quit, and I'm done. And if so, then I think that's, as I say, that's what happened with Foss. But in this instance, he chose not to quit, and Honeywell chose to allow him not to quit. And again, the concern about health and family was not very big at the trial level, and part of that is because of what's been filed in Hoogerwerth at the trial, and actually at the appellate level, and what was filed in Legado at the trial level, which is Charm, in terms of spending more time with his family, he was still answering discovery. I assume that doesn't take long for somebody that's done it as many years as he has. But he gave a deposition March 29. He gave a deposition April 6. He gave a deposition April 13. Where did he do that? In New York, New York and New Jersey. And we referenced the April 6 deposition because, going back to Hoogerwerth, the hearing on the motions to compel and so on are March 30, and Honeywell's trial counsel said that we're not producing him, and we won't produce him for Monday, April 4, or the trial to begin Monday, April 4 in Hoogerwerth. We're not going to produce him. Let's proceed to the determination of what sanctions, if any. April 6, he gave a deposition in a Wisconsin case. And on April 4, we appeared in Hoogerwerth on the motion to default, and Honeywell said he's not coming. No affidavit was ever filed. For that matter, none was ever filed in Legado as to how he was informed of the court's decision, what he said in response, when he was told that, look, they're going to default us if you don't come, Joel. There's no affidavits of him, how he was told and when and what he was told. And I kept sort of asking, you know, and bringing to the attention of the trial court, saying, Honeywell, you haven't filed any affidavits for him. You don't have to travel to file an affidavit. I thought there was an affidavit. It predates the orders saying he has to come. They filed an affidavit where he says, I want to spend more time with my family. Is the reason for the trial court's order that the trial court thinks Honeywell is evading Rule 237B? I will not speak for a trial court other than what it said, and neither trial court says that, but I'm suggesting there's a clear implication that it's evading Rule 237B. And that's me. I can't speak for Judge Berenson and Judge Drzeski and say that, you know. And by that I mean, well, to finish my earlier thought, there's an April 6th deposition. It's in the Legate Record. And for that matter, it was filed with this court in response to Honeywell's motion, where he gives a deposition on Wednesday. We had the motion to default on Monday at Hoover Worth, April 4th. April 6th, he gives a deposition in a Wisconsin case in the New York City area. And he's asked about the fact that he was ordered to come to Bloomington. He says, I'm not familiar with that. And he's asked where you're supposed to be in Bloomington on Monday. And he says, I'm not familiar. And then he's asked, will you travel to Bloomington under any circumstances? He was told not to answer. Perhaps he forgot the conversations he was asked about. I don't know. But I think there is an – Honeywell knew he was subject to Rule 237, according to the trial courts. They knew they had produced him. And, in fact, counsel said that they had produced him voluntarily. There were times in the past where they produced him voluntarily. There were times when they moved to Quash. In Hoover Worth, the first Hoover Worth trial was one where they said, as they moved to Quash, other people, such as Coss, who at that time was a, quote, independent contractor. We quoted from the hearings in Hoover Worth in 2006, where they said that we're not moving to Quash as the charm. He's our corporate representative. We think he can answer Mr. Wilder's questions. That was in connection with the May 2006 trial. Why isn't it good enough, why can't you just take his evidence deposition, or why can't you just use the testimony from prior trials? The testimony from the prior trials, there's been about 20 of them, has morphed over the years. And the way it has morphed is, in part, his testimony. The first trial, he admitted the company knew before launch in the 1950s. And then after launch, it was 1972, and that's where it's remained. There have been documents produced. There were more than 15,000 produced in March of 2008. There were 500 produced at the end of October 2010, which had never been produced before. There were 18,000 in the fall of 2009. And then I took his deposition regarding the 500 from October of 2010 and January 2011. And after I took that, they gave him 10,000 more new documents. So to use a prior transcript, it's been an evolving litigation in terms of what Honeywell has produced. And I have never taken his deposition regarding the 10,000 documents in February of 2011. I asked him a few questions about them at the February 2011 trial. Why couldn't you take his evidence deposition, for example, in New York? Two answers to that. One is live testimony is preferred. And if he had a health concern, that would be one thing, or some other reason. But the idea that the defendant and its spokesperson can determine that they won't comply with Rule 237B, if he's subject to Rule 237B, and won't be examined in front of the jury, I don't believe there's any support for that. A practical matter in addition, of course, is the length of it. The length of it, because it's a multi-day witness, I ask him numerous questions, they ask him hours worth of questions. And we all know, talking heads, just how entertaining they are to the jury. But that's a practical matter. But the fact is, in Carney, I believe it was you who said that it is plaintiff and not the defendant who chooses how they will prove their case. And I think by page 361 and 362 of the Carney decision. And the idea that Honeywell and Mr. Charm could decide whether Rule 237B would have effect is not something that finds support. And that's basically what they've accomplished. If Mr. Charm got hit by a truck, as near as I can tell, there's nobody else in the world that can speak corporately for Honeywell on these issues. That was their position as of spring. They're producing someone now, but that's not in his record. But at the time, yeah, that was, they said he was presented as a person who knows everything, knows more than anybody else alive, and he's the one who answered everything under oath for them. And I would suggest the intent of Supreme Court Rule 237B was allow you to bring in the person who has given all the prior statements under oath on behalf of the company so that they can be cross-examined. Honeywell in their brief says, you know, default strikes at the very heart of the adversarial system. I'm suggesting you're hurting the adversarial system if you allow a party to say, guess what, all of our interrogatories will be sworn to by Charm. All of our requests for production will be certified by Charm. All of our Rule 206 speaking on behalf of the company will be Charm, but you don't get to get Charm in front of a jury. Instead, he's in New Jersey, and that's because we and Charm have decided we're not going to, we're going to use the only court system, but we're not going to allow you to question the people that have supplied all the statements under oath. I said in my conclusion in the briefs, I think that if this passes, then if you're a corporation, then you're nuts if you have an employee sign or say anything under oath. Instead, you do what Honeywell did back in 97, which is you outsource your spokespeople. You have two guys retire, both in November of 97, both set up their own corporations. Charm set up Charm S&E International Inc., which has always had one employee, him. They do all the talking under oath for the company until trial, and then at trial you don't get them because they reside outside the state of Illinois. I'm not trying to be sarcastic, but I represent widows. What I should do is say, Antoinette, you're not going to sign any of these answers to discovery. We're going to have your nephew in Missouri sign everything. And then at the time of trial, say, well, you don't get him because he doesn't reside in the state of Illinois. And I would suggest back in 67, when the Supreme Court passed Rule 237B, and in 68 when they said what the sanctions would be, there's no suggestion, of course, there's no legislative history with the Supreme Court rule, but no suggestion that they gave this thought to the idea that in mass litigation, but even in non-mass litigation, that a company would say a large corporation, which is multi-state or multi-national, would decide that here's what we're going to do. We're going to have people retire. They'll become our spokespeople. We have over 100,000 employees, but we won't agree to produce any of them voluntarily under Rule 237B, which has always been the case. I've been able to force some to come based on a deposition, but we won't produce any of them voluntarily. They won't answer our discovery. They won't be our Rule 206 spokesperson. For that, it'll be these, quote, retired guys. We don't get W-2s anymore. And then we'll say the plaintiff can't question the time of trial. I don't think that was the intent of the Supreme Court Rule 237B. I don't think that's the effect. And I base that in part on the decisions of this court. I base it on some of the language of Justice Volandick in the Supreme Court in Adcock, where he said that Owens Corning, and yes, Conson was an officer at the time, and Feinstein was the director when they refused to appear, and they filed special appearances. They filed affidavits saying we're not coming. I've been told that my presence is requested, and I'm refusing to come. There isn't that in either of these cases, from Charm as to what he was told, when he was told, and how he was told, other than a statement of growth in the Wisconsin case that he wasn't where he was supposed to be employed. But Justice Volandick in Adcock said that the effect of Owens Corning is to make a strategic decision to evade Rule 237, to obstruct justice, in effect, in this press testimony. I'm suggesting that's what's occurring here. As to the fall sanction, again, it's not in the Hoogerwerth brief. Honeywell doesn't even cite the transcript. I did, in my brief, of the hearing of the motion of the fall, because Judge Lawrence, the Hoogerwerth, Judge Rzeski, and Legate did not take this lightly. They stated their reasons. You can read Justice Lawrence's. It's five pages of transcript, his ruling. He says, I don't want to do this. I really don't, but I don't think I have a choice. And there's not a lot of argument, given the breadth of Charm's knowledge, both on he'd been designated as an opinion witness at Hoogerwerth by me and by them. And then they drew him March 24th or 25th, 10 days before trial, as a witness, period. But, I mean, he has testified on causation. He's a certified industrial hygienist. He's a member of the American Industrial Hygiene Association, has a master's in public health. He's given opinions on causation, on fiber causation, all those things. It wasn't just one document or a set of documents he knew about. I believe the fault was the appropriate sanction. Anything less would have meant a sanction on the plaintiff, sort of like what occurred in Carvey, because he went to causation on these cases, both of them, both the lung cancer of John and the masonry of the one of Guy LeGate. As far as due process, that entire argument really relates back to the first one. It would be subject to Rule 237. And if not, you know, we start from the beginning.  That's what every judge tells the jury. That's what the defendants say. To allow this to occur means that you're a large corporation. It's a different set of rules. Thank you. Rebuttal. Thank you. How about the argument that counsel makes, Charm signed these interrogatories and all that.  Because that's what it's allowed for under the rules, Your Honor. If you look at the language that the Supreme Court uses in the various rules, they use different terms. And those different terms have meanings. 237B refers to an officer, director, or employee at the time of trial. 206 allows a corporate representative to be a managing agent and director, managing agent, or quote, unquote, other persons. 213 allows a corporation to verify discovery by, again, an agent. The terms agent, managing agent, other persons, those terms don't appear in 237B. And I would further add that... Is it true that counsel asked you to designate somebody else as a corporate representative who would appear at trial, and you refused to do that? We had significant argument on motions to compel for 206 witnesses in cases that were not going to be tried in Hoogerwerth. It was in a different case. There was a motion to compel a 206 witness, again, a corporate representative, in Legate. And plaintiffs tried to characterize that request as for somebody other than Charm. Honeywell had an obligation at that time to produce the person that they understood best fit within the requirements of 206 as having the information of the corporation. And that was Mr. Charm. There was nothing in the order from the trial court, either in Burtis or later, that we could not, that Honeywell could not designate Mr. Charm. It was a 206 corporate representative. It seems to me that if Mr. Charm would drop dead, all this asbestos litigation in McLean County grinds to a halt. Is that what you're looking at? Without going to Honeywell's response, if that would happen, that is not the case. As Mr. Wilder, for plaintiff, indicated during his response, although it's not in this record, there is a 206 corporate representative deponent who will be deposed in an upcoming trial later this month, actually, for a trial scheduled to begin February 6th. But as I understand it, for 20 years or so, these two fellows who left Honeywell and established their independent consulting businesses have been the only people who have spoken in court for Honeywell for 20 years. On issues related to asbestos in connection with this automotive asbestos contingency project. So now, if they go away, both of them go away, one has, one's hanging in the air. What are you going to do? Again, Rule 206 requires us to have a corporate representative. And what you have to do at that point is... Do they have to know anything? They have to know the knowledge of the corporation. And as plaintiffs argued in their briefs, certainly with regard to Mr. Charm, he didn't have personal knowledge regarding a lot of, remember these are conspiracy cases going back, the earliest piece of evidence is 1932. Mr. Charm didn't have any involvement with Bendix, the underlying company that's accused of being part of the conspiracy, until 1983. It's based on his knowledge from reviewing documents, reviewing prior transcripts, and some from his more professional involvement as an industrial hygienist on the issues of asbestos. But on the issues of the documents that plaintiffs rely upon to attempt to prove conspiracy, there's nobody with personal knowledge. Absolutely, we have to designate a 206. I don't think that conflates with having to come up with an alternative 237B witness. We either have an officer director or an employee subject to the rule, or we don't. We can't create one. Let me ask this. If the plaintiff wants a person from Honeywell on the stand so the plaintiff can ask questions about the interrogatories, etc., isn't the plaintiff entitled to that? Not as written under the rules. The rules allow for somebody else to verify. I understand that there might be a problem with the Supreme Court rules in that it doesn't contemplate the situation. If plaintiff says, we want you to designate an employee or an officer or a director who will testify regarding these interrogatories, don't you have to do that? There's no rule that requires that. They require a 206 corporate representative, and then separate and apart from that, there's Rule 237B. They're two separate rules, Your Honor. That being said, Honeywell does receive 237Bs for a myriad of other people who do fall within 237. We might move to quash those, but again, because they are employees, we recognize the holdings, not only in White v. Garlock, but in Johnson, Kearney, and Adcock that says, you know what, if they're employees, you have to produce them, and we do that. But in this case, you refused, or you did not designate anybody other than Charm. We did not designate a 237B witness. It's not required of Honeywell. I see my time is up. Thank you. Thank you, Counsel. We'll take this matter under advisement. We'll stand and briefly recess until readiness of the next case.